## THERESA HERMAN *v.* GASPARD THEURER.

Where the community is dissolved by the death of the husband, the surviving wife is presumed to have the intention to accept the community, and her right to renounce is subject to the same rules as govern the beneficiary heir.

But a different rule prevails where a divorce has been pronounced. Unless the wife accepts the community within the delay allowed by law, and obtains from the Judge a prolongation of that delay, she is supposed to have renounced the community. Code 2389.

APPEAL from the Fifth District Court of New Orleans, *Augustin,* J. *Tissot* and *Duvigneaud,* for plaintiff. *Dufour* and *Roselius,* for defendant and appellant.

MERRICK, C. J. In August, 1843, the defendant, *Gaspard Theurer,* instituted an action against the plaintiff, his then wife, for a divorce, on account of adultery committed with one *Jacob Euper,* and also to obtain possession of a child of their marriage, to set aside certain donations, and to liquidate and settle the community.

No personal service of the petition appears to have been made upon the plaintiff; but a curator *ad hoc* was appointed to represent her in that suit, and service of the citation was made on him. The curator answered by a general denial. The proof of the facts seems to have been conclusive. The court decreed the divorce prayed for, gave the care and keeping of his minor son to *Theurer,* annulled the donations and ordered that the parties, "plaintiff and defendant, be referred to *Louis T. Caire, Esq.,* a notary public, for the settlement of the community of acquets and gains which existed between them." This decree was signed May 10th, 1844. It will be observed that up to this date, there is nothing in the record which shows that *Theresa Herman* ever accepted the community or desired that the same should be partitioned between her and *Gaspard Theurer.*

In August, 1843, an inventory was made, and at the making of the same, *Theurer*, the defendant, was present in person and signed it, and *John L. Thielen* signed the same, purporting to act as attorney for plaintiff. This inventory was filed in court on the 16th of September, 1844, and showing the debts of the community to be equal to the assets. Nothing further was done in the case until the present suit was instituted.

It appears from the allegations in plaintiff's petition, that she has married *Jacob Euper*, the person with whom the decree of divorce convicts her with having committed adultery.

The present action was commenced by service of citation on the 11th day of June, 1852. Plaintiff prays in her petition for a renewal of the order given in the judgment of May 6th, 1844, (referring the parties to a notary to take an inventory,) in order to proceed to a partition, and that the former inventory be declared null and void, and that a partition of the community take place between the parties.

The defendant resists plaintiff's demand on the following, among other grounds, viz:

That the plaintiff, not having accepted the community within the delay allowed by Article No. 2389 of the Civil Code, must be considered as having renounced the same.

We find that the plaintiff in her petition expressly denies that she was ever notified to attend the taking of the inventory, or represented at the taking of it according to law. There is nothing in the record which shows that *Mr. Thielen* was authorized to represent her, and she could not now be heard to contradict the allegations of her petition. So far, therefore, as the taking of the inventory is concerned, it proves no acceptance of the community on the part of the plaintiff.

But it is contended that the acquiescence in the portion of the decree quoted in this opinion, had the effect of an acceptance of the community, and a decision from Sirey, A. D., 1830, Tit. Communauté, Partie 2d, p. 97, in these words, is quoted as an authority, viz:

Attendu que lorsque le jugement qui prononce le divorce renvoie les parties, sur leurs conclusions, devant un notaire pour y régler leurs droits, et que les parties ont acquiescé audit jugement, il est manifeste que cela est une acceptation suffisante de la communauté.

The difference between the case cited (were we to view it as an authority) and the one at bar, consists in this: the decree in the one case was formed upon the "*conclusions*" of the parties, in the other, without any prayer to that effect on the part of the defendant, and on a mere general denial of the curator *ad hoc* appointed to defend her.

As the curator *ad hoc* had no power to accept the community for the plaintiff, we must construe the judgment rendered upon the pleadings in this case as simply recognizing the defendant's right to accept or renounce the community, as she should deem most to her interest. Had she been sued immediately afterwards for the one-half of any of the large debts of the community, unquestionably she could have set up her refusal to accept as a bar to such action. *Hyde* v. *Oreddic*, 10 R. R., 393-4; *Olacor* v. *Lane*, 5 A. R., 499.

In order, therefore, to render the plaintiff, under the judgment, responsible for one-half of the debts of the community, it was necessary that she should, by some act of her own, evince her determination to accept the same. Where

HERMAN
v.
THEURER.

the community is dissolved by the death of the husband, the surviving wife is presumed to have the intention to accept, and her right to renounce is subject to the same rules as govern the beneficiary heir. But a different rule prevails where a divorce has been pronounced. Unless she accepts the community within the delay allowed by law, or obtains from the Judge a prolongation of that delay, she is supposed to have renounced the community. C. C., 2389.

The reason of the rule is doubtless this : the husband is the head and master of the community, and at once responsible for its debts, and being seized of it, he ought not to be compelled to demand a partition of the wife of the effects in his hands, and thus lessen his means to meet the debts, particularly as he is responsible for the whole, whilst his wife, by acceptance, would only be responsible for one-half of the same. The interest of the creditors and the public requires that the delay allowed the divorced wife to accept, should be, as provided by the Civil Code, a short one.

The plaintiff having suffered eight years to elapse after the rendition of the judgment in action for a divorce, without doing any act by which her acceptance of the community can be clearly inferred, her action is barred, unless the conduct of the defendant has been such as to prevent her from ascertaining her rights in regard to the community.

We do not think the testimony makes out a case of that kind. The absence of the plaintiff with her paramour, at the time the decree was pronounced, is not a circumstance calculated to make a very favorable excuse for not looking into her rights at the time the judgment was rendered. The demand of the notary, whether certain property did not belong to the community, and the answer that it did not, were on file, and if the answer was not true, (relating as it did to a grocery store,) she must have known the fact at the time, and it was for her to controvert that part of the inventory. But she did not then see fit to do so. The testimony which she has introduced, after this lapse of time, conflicting as it is, does not possess that clear and consistent character, and show that want of knowledge on her part, and that deception on the part of the husband, which would entitle her to a restitution against her tacit renunciation of the community.

The judgment of the lower court is therefore reversed, and ours is in favor of the defendant, with the costs of both courts.