CLARK, Justice.
| ]The res nova issue before us is whether a defendant having been tried once, may nevertheless be ordered to stand trial a second time when the trial judge in the first proceeding, acting without authority, grants a motion for acquittal in a jury trial, dismisses the jury and subsequently orders a mistrial. A decision whether to retry a defendant under these circumstances requires a careful analysis of the constitutional protection against double jeopardy, the authority of a Louisiana judge in a criminal jury trial, and the grounds for a valid mistrial. After review, we find the trial judge had no constitutional or statutory authority to grant the acquittal under Louisiana law, which distinguishes this case from the federal jurisprudence relied upon by the court of appeal to reverse. Finding the trial judge’s verdict of acquittal was without legal authority or effect, we hold the mistrial was properly granted and retrial is not barred by double jeopardy.
FACTS AND PROCEDURAL HISTORY

Trial Court

The defendant, Morris Davenport, Jr., was charged by bill of indictment with one count of aggravated rape, in violation of La. R.S. 14:42(A)(6). For a conviction, the state was required to prove:
... a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under 12any one or more of the following circumstances: ... (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
A “mental infirmity” is further defined in the statute as “a person with an intelligence quotient of seventy or lower.” La. R.S. 14:42(C)(2).
A jury was selected on November 27, 2012, and the defendant’s trial by jury began on November 28, 2012. After the presentation of the state’s case in chief, out of the presence of the jury, defense counsel moved for an acquittal under the provisions of La.C.Cr.P. art. 778, which provide:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state’s evidence or of all the evidence, if the *139 evidence is insufficient to sustain a conviction.
If the court denies a defendant’s motion for a judgment of acquittal at the close of the state’s case, the defendant may offer its evidence in defense. [Emphasis added]
Defense counsel’s bases for urging the motion were his contentions the state failed to prove a material element of the crime charged, that being the victim’s impairment by having an intelligence quotient (I.Q.) score of seventy or less, and the general lack of competent evidence. The trial judge denied the motion and the trial continued with the defense presenting its case.
At the close of all the evidence, a recess was taken to give the attorneys an opportunity to formulate their closing arguments and to hold a charge conference on the court’s proposed jury charge. At that time, the trial judge informed counsel he was reconsidering the defendant’s earlier motion. After counsel for the state and the defendant presented additional arguments out of the jury’s presence, the trial judge granted the defendant’s motion, finding the state had not proved the victim’s mental infirmity pursuant to the criminal statute. Over the state’s objection, the trial judge ordered the defendant be acquitted and dismissed the Injury.[1]
Several days later, on December 4, 2012, the trial judge held a hearing at which he acknowledged he had erred in granting the defendant’s motion for acquittal. Over defense counsel’s objection, the trial judge declared a mistrial pursuant to La.C.Cr.P. art. 775(5), finding it physically impossible to proceed with the trial in conformity with law since the jury had been released. See La.C.Cr.P. art. 775(5) (“A mistrial may be ordered, and in a jury case the jury dismissed, when: ... (5) It is physically impossible to proceed with the trial in conformity with law.”).

Court of Appeal

The defendant sought review of the trial court’s judgment ordering a mistrial, arguing any retrial would violate the prohibitions against double jeopardy. Recognizing the issue as res nova and one on which Louisiana jurisprudence is silent, the court of appeal turned to federal jurisprudence. Relying primarily on three Supreme Court cases, Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), and Evans v. Michigan, — U.S. —, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013), the court of appeal agreed with the defendant, finding an acquittal, even one based on an egregious legal error, nevertheless acts as a bar to the retrial of a criminal defendant. Defendant’s writ application was granted and made peremptory. The trial court’s ruling ordering a mistrial was reversed, vacated and set aside. State v. Davenport, 2013-39 (La.App. 3 Cir. 7/3/13); 116 So.3d 1038.
In reaching its conclusion, the court of appeal was persuaded by the following reasoning. In Fong Foo, the federal district court, although having the power to direct the jury to return verdicts of acquittal, granted a motion of acquittal on a ground not authorized by statute. The Supreme Court reasoned that when a ^defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were “egregiously erroneous.” Id., 369 U.S. at 143, 82 S.Ct. at 672. In Sanabria, the federal district judge made erroneous evi-dentiary rulings, which led to an acquittal for insufficient evidence. The Supreme *140 Court held the judgment of acquittal, however erroneous, barred further prosecution of any aspect of the criminal charge, as well as appellate review of the trial court’s error. Id., 437 U.S. at 68-69, 98 S.Ct. at 2181. In Evans, the Supreme Court granted certiorari in a case originating in a Michigan state court. The Michigan trial court entered a directed verdict of acquittal after the state rested its case on the ground the state failed to provide sufficient evidence of a particular element of the offense. The Michigan appellate court reversed, finding the unproven “element” was not actually a required element at all, and rejecting Evans’ argument that double jeopardy barred retrial. The Michigan Supreme Court affirmed. The Supreme Court reversed, holding retrial of the defendant was barred by the Double Jeopardy Clause. Id., 133 S.Ct. at 1081.
Evans provided a concise review of Supreme Court jurisprudence on improperly granted acquittals and the effect of double jeopardy. Starting with Fong Foo, the Supreme Court noted:
An acquittal is unreviewable whether a judge directs a jury to return a verdict of acquittal, e.g. Fong Foo, 369 U.S., at 143, 82 S.Ct. 671, or foregoes that formality by entering a judgment of acquittal herself. See Smith v. Massachusetts, 543 U.S. 462, 467-468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005) (collecting cases). And an acquittal precludes retrial even if it is premised upon an erroneous decision to exclude evidence, Sanabria v. United States, 437 U.S. 54, 68-69, 78, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); a mistaken understanding of what evidence would suffice to sustain a conviction, Smith, 543 U.S., at 473, 125 S.Ct. 1129; or a “misconception of the statute” defining the requirements to convict, [Arizona v.] Rumsey, 467 U.S., at 203, 211, 104 S.Ct. 2305[, 81 L.Ed.2d 164 (1984) ]; cf. Smalis v. Pennsylvania, 476 U.S. 140, 144-145, n. 7, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). In all these circumstances, “the fact that the acquittal may result from erroneous evi-dentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character.” United States v. Scott, 437 U.S. 82, 98, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (internal quotation marks and citation omitted).
Evans, 133 S.Ct. at 1074. In other words, the Supreme Court has held an error in determining the underlying merits of an acquittal does not change the basic nature of the ruling as an acquittal. While acknowledging the trial court’s ruling in Evans was wrong in its interpretation of the statutory offense, the Supreme Court found the ruling was nevertheless an acquittal since the ruling evaluated the state’s evidence and determined the evidence was legally insufficient to sustain a conviction. Id., 133 S.Ct. at 1075-1076.
The court of appeal here noted the difference between the legal errors at issue in the federal jurisprudence, upon which it relied, and the error made by the trial judge. The court of appeal recognized the legal errors involved an erroneous interpretation of law regarding the sufficiency of the evidence in the federal jurisprudence. Here, the legal error involved the trial judge’s authority to act. Nevertheless, because the trial judge based his judgment of acquittal on his assessment of the sufficiency of the evidence, and “despite the absence of a legal foundation,” the court of appeal held “once entered, the judgment of acquittal was final.” Davenport, 2013-39, p. 11; 116 So.3d at 1045. Consequently, the court of appeal found the trial court’s subsequent ruling in ordering a mistrial was error, requiring reversal. Id.

*141
Parties’ Claims

The state seeks review of the court of appeal’s holding. The state contends, since La.C.Cr.P. art. 778 is strictly and explicitly limited to bench trials, the trial judge in this matter was without legal power to acquit the defendant before the jury returned a verdict. The state urges that a ruling made without legal authority is null and void ab initio and implicates the constitutional separation of powers. The state argues the federal cases relied upon by the defense and appellate court are to 16be distinguished from this case due to the differences in the rules governing criminal matters in Louisiana and the federal system. The state argues mistrial was properly granted under La.C.Cr.P. art. 775(5) because the jury was dismissed based on the trial judge’s action before delivering a verdict and it became physically impossible to continue the trial. Because a legally ordered mistrial was declared, the state asserts a retrial will not constitute double jeopardy under La. C.O.P. art. 591.
The defense contends the trial court was merely premature in granting his motion for acquittal before the jury returned a verdict, since Louisiana criminal procedure authorizes a trial judge to act on a motion for post-verdict judgment of acquittal in La.C.Cr.P. art. 821. The defense argues that although the state introduced evidence of the victim’s school test scores, there was no specific evidence of the victim’s I.Q. Thus, according to the defendant, the evidence clearly did not support a finding of the victim’s mental incapacity as required by the criminal statute. The defendant urges that a post-verdict judgment of acquittal, authorized under the law, would have been proper even if the jury had returned a verdict of guilty as charged. The defense argues the court of appeal’s analysis is correct in its reliance on federal case law which holds double jeopardy attaches even when an acquittal is granted on the basis of an egregious legal error. Davenport asserts the trial judge’s action in granting his motion for acquittal, performed without authority, is such a legal error.
We granted the state’s writ to determine the correctness of the court of appeal’s analysis. State v. Davenport, 2013-1859 (La.11/15/13); 125 So.2d 1096.
LAW AND DISCUSSION
The issue before us is whether a mistrial was validly ordered by the trial judge. But since this ruling must also resolve the underlying issue whether the acquittal granted without authority by the trial court should be given effect, and |7thus preclude retrial under double jeopardy, we will review the principles of double jeopardy and the requirements for a legally ordered mistrial which must guide our decision.

Legal Principles

Protection against double jeopardy is guaranteed to a criminal defendant in a Louisiana state court under both the federal and state constitutions. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment,[2] provides that no person-shall “be subject for the same offence to be twice put in jeopardy of life or limb.” Article I, § 15 of the 1974 Louisiana Constitution contains a similar guarantee, providing in pertinent part: “No person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sus *142 tained.” Enforcing the constitutional guarantee, the Louisiana legislature enacted La.C.Cr.P. art. 591, which defines double jeopardy as follows:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
This court has held the protection against double jeopardy “is a guarantee against a second prosecution for the same offense after acquittal or conviction, and against multiple prosecutions for the same offense.” State ex rel. Robinson v. Blackbum, 367 So.2d 360, 362 (La.1979). As the Supreme Court explained, “[t]he prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.” Ball v. United States, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896).
|RThus, the issue before us primarily concerns whether Davenport’s initial trial ended in “a mistrial legally ordered under the provisions of Article 775” of the criminal code. Under Louisiana law, jeopardy attaches when the jury panel is sworn in a criminal jury trial. See La.C.Cr.P. art. 592. We have held “[i]t is a well-established part of our constitutional jurisprudence that jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where unforeseeable circumstances ... arise during [the first] trial making its completion impossible, such as the failure of a jury to agree on a verdict.” State v. Goodley, 423 So.2d 648, 650 (La.1982), citing Wade v. Hunter, 336 U.S. 684, 688-89, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949) (internal quotations omitted).
The mistrial in this case was ordered over Davenport’s objection. We have held “a mistrial declared by the trial court without the- consent of the defendant will ordinarily bar further prosecution of him for the same criminal conduct.” State v. Lawson, 338 So.2d 627, 629 (La.1976). However,
[t]his rule is subject to limited exceptions, where the court-ordered mistrial is regarded as justified in the interests of the accused or as required by physical or legal necessity. See Note, 32 La. L.Rev. 145 (1971) and Official Revision Comments (b) and (c), Article 775 of the Louisiana Code of Criminal Procedure. Id.
The grounds for declaring a mistrial without a defendant’s consent are considerably narrower as a matter of Louisiana law than the grounds for a mistrial under federal law. See Lawson, 338 So.2d at 630 (“... while the Louisiana and federal criteria are generally congruent, nevertheless the federal constitutional test justifying a mistrial (and thus not barring re-trial) is more general and in some respects broader, than is the more specific and somewhat more limited conditions provided by Louisiana’s constitution and statutory law by which Louisiana trial courts may justifiably declare mistrials without the consent of the defendant.”). A trial judge’s discretion is limited by La.C.Cr.P. art. 775, which allows only five grounds for declaring a mistrial without the defendant’s consent.
IflArt. 775 provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when: “... (2) The jury is unable to agree upon a verdict; (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict revers *143 ible as a matter of law; (4) The court finds that the defendant does not have the mental capacity to proceed; (5) It is physically impossible to proceed with the trial in conformity with law; or (6) False statements of a juror on voir dire prevent a fair trial.”
Under Louisiana law, “[a]ll other dismissals of the jury prior to verdict without the defendant’s consent will not be mistrials at all, even though the court may so label them, but will be illegal dismissals, and in such cases the principles of double jeopardy will come into operation.” See Art. 775, Official Revision Comment (c). We note the trial judge’s release of the jury in this case was a consequence of the trial judge’s granting of the motion for directed verdict, and not as a consequence of a declaration of mistrial. Technically speaking, there was no dismissal of the jury prior to the verdict without the defendant’s consent and the question of an illegal dismissal in that regard is not before us.
Instead, we must direct our focus to the question whether mistrial was legally ordered in the trial judge’s subsequent action. If the mistrial in Davenport’s trial is found to have been ordered under one of the grounds of Art. 775, then the mistrial will have been legally ordered and will not bar a retrial of the defendant for aggravated rape. If the action does not constitute a mistrial under one of the five grounds specified in Art. 775, then the trial court’s declaration of a “mistrial” was in actuality an illegal dismissal and retrial is barred.

Review of Appellate Decision

A critical aspect of the facts presented here, not present in the federal cases relied upon by the court of appeal, is that there is no valid authority under the Louisiana Constitution or statutory law to support the trial judge’s action. What the federal cases share, and what we find distinguishes those cases from the present |inone, is that each of the trial judges— whether the cases were tried in a federal court or a state court — had the power to acquit during a criminal jury trial. In each of the cases relied upon by the court of appeal, some version of Fed. Rule Crim. Proc. 29,[3] or a similar state rule,[4] provided *144 the trial judge with the authority to make a finding concerning the merits of the guilt or innocence of the defendant before the case was decided by the jury. After recognizing that the complexity of the issue in the present case arises from a code article distinct from the federal rules and specific to Louisiana criminal procedure (Art. 778),[5] we find the appellate court erred by failing to take into account the effect of that distinction and specificity in its analysis.
In each of the federal decisions relied upon by the court of appeal, the Supreme Court held even egregious legal error as to the merits underlying the acquittal did not change the “essential character” of the ruling as an acquittal. That is not the question now before us. What is present here goes beyond a legal error lnon the merits of a ruling concerning evidence sufficiency, but is instead the absence of legal authority to act. In this case, the trial judge did not have the legal authority to grant an acquittal, either a legally correct one or not, or the legal power to judge whether there was sufficient evidence to convict the defendant before the case went to the jury. Based on our analysis of the applicable law, we conclude the ruling of a trial judge acting with authority, who makes a mistake of law, is different from a trial judge who acts without authority, and that this distinction compels a different result when determining whether a retrial is prohibited. For this reason, we reject the analysis of the court of appeal and find this case to be distinguishable from the federal jurisprudence upon which the appellate court relied.

District Court’s Authority

In this regard, the state argues the trial judge’s ruling violated the separation of powers recognized by our state constitution. La. Const, art. II, § 1 states: “[t]he powers of government of the state are divided into three separate branches: legislative, executive, and judicial:” Limitations are placed on each of the three branches in La. Const, art. II, § 2, which provides: “[ejxcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.” In this case, the trial judge’s unauthorized ruling was not an exercise of legislative or executive power. Therefore, it would be imprecise to call the trial court’s action a violation of the separation of powers. However, insofar as the trial court’s action was an unconstitutional extension of judicial power, the ruling was ultra vires, being beyond the power or authority granted to a district court judge in a criminal jury trial.
A district court has original jurisdiction of all criminal matters, and | ^exclusive original jurisdiction of felony cases. See La. Const, art. V, § 16.[6] La.C.Cr.P. art. 16 provides that “[cjourts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of this state except as their statutory jurisdiction and powers are restricted, enlarged, or modified by the provisions of this Code.” (Emphasis added). Where no procedure is specifically prescribed by the criminal code or the statutes, “the court may proceed in a manner consistent with the spirit of the provisions of [the criminal code] and other *145 applicable statutory and constitutional provisions.” La.C.Cr.P. art. 3.
La. Const, art. I, § 17(A) provides in pertinent part: “[a] case in which the punishment is necessarily confinement at hard labor shall be tried before a jury” absent a waiver of that right.[7] The defendant in this matter was charged with committing aggravated rape, a felony punishable by life imprisonment without benefit of parole, probation, or suspension of sentence.[8] The defendant did not waive his right to be tried by a jury. The defendant was, thus, constitutionally and statutorily entitled to have his trial proceed to a verdict by the jury.
Under the framework of Louisiana criminal law, a trial judge must charge the jury as to the law applicable to the case, but the jury is the judge of the law and the facts on the question of guilt or innocence, and the jury alone weighs the weight and credibility of the evidence.[9] Only in a bench trial is the trial judge | ^authorized to act on a motion for directed verdict or judgment of acquittal pursuant to Art. 778. The unambiguous language of the state constitution, and the limitations placed on the district court’s authority by the criminal code, show the trial judge’s actions here are clearly prohibited in a criminal jury trial.
This is not a question of a trial judge acting prematurely on a motion he would otherwise have had authority to act upon, as argued by the defendant. The only way a lawful judgment of acquittal could have been granted by the trial judge was for the judge to follow the procedure set forth in La.C.Cr.P. art. 821. Art. 821, which provides for a motion for post-verdict judgment of acquittal, authorizes a trial judge to consider the sufficiency of the evidence in a criminal jury trial, but only after the jury has returned its verdict, and only on the defendant’s motion.[10]
*146 | uDirected Verdicts in Louisiana
The statutory history of Art. 778 reinforces our belief that, except for a brief five-year period several decades ago, Louisiana law and jurisprudence has unmistakably rejected empowering judges to take cases away from criminal juries and interjecting their own determination of evidence sufficiency before a verdict is rendered. The 1921 Louisiana Constitution guaranteed that “... [t]he jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge.” La. Const, art. XIX, § 9 (1921). For this reason, we held in State v. Broussard, 217 La. 90, 46 So.2d 48 (La.1950): “[directed verdicts are unauthorized under our law; the jury is the judge of the law and the facts, it being within its province alone to determine the weight and credibility of the evidence.... And, while the judge has the right to instruct the jury on the law of the case, he may not comment upon the facts.... Consequently, to permit him to direct a verdict would constitute an infringement on the function of the jury.” Id.; 217 La. at 94-95, 46 So.2d at 50 (citations omitted and citing cases; emphasis added).
A limited form of directed verdict was introduced by the legislature in 1950 by the enactment of La. R.S. 15:402.1.[11] This statute authorized a trial judge to order the entry of a judgment of acquittal after the evidence on either side was closed if the evidence was insufficient to sustain a conviction.[12] This procedure 11swas authorized for use in bench trials only and was, essentially, unreviewable.[13]
In the 1966 revisions to the Code of Criminal Procedure, the legislature authorized directed verdicts in criminal jury trials by enacting La.C.Cr.P. art. 778.[14] Modeled after Fed. R.Crim. Proc. 29 and taken from former La. R.S. 15:402.1, Art. 778, as originally enacted, provided:
In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close *147 of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant’s motion for a directed verdict or judgment of acquittal at the close of the state’s case, the defendant may offer his evidence in defense.
This new procedural mechanism, patterned on the federal rule and engrafted onto the Louisiana scheme of criminal law, soon ran afoul of the state constitution. Only three years later, in State v. Hudson, 253 La. 992, 221 So.2d 484 (La.1969), cert. dismissed, 403 U.S. 949, 91 S.Ct. 2273, 29 L.Ed.2d 855 (1971), the court sua sponte declared the first paragraph of former Art. 778 to be “repugnant” to the constitutional guarantee of La. Const, art. XIX, § 9 (1921). The court held “questions of guilt or innocence can only be decided by the jury under the plain language of the Constitution. Judges must decide only those fact questions which do not relate directly to guilt or innocence.” Id., 253 La. at 1034, 221 So.2d at 499. 11fiBecause this was a capital case, the court noted the power to determine guilt or innocence in capital cases had not been vested in judges by the constitution; “instead the people have reserved that power to juries.” Id., 253 La. at 1034-1035, 221 So.2d at 499.
The court also found the first paragraph of Art. 778 conflicted with the limits of the court’s appellate jurisdiction.
In addition, Article VII, Section 10, of the Constitution limits the appellate jurisdiction of this Court in criminal cases to ‘questions of law only.’ Read in connection with Article XIX, Section 9, this means that we can neither determine facts nor review the correctness of the findings of the trier of fact. It is a logical and inescapable step from this conclusion to realize that this limitation of our appellate jurisdiction in criminal cases would not permit this Court to review the trial judge’s determination of the ‘sufficiency’ of the evidence.
Although we have often held that a question of law is presented by a contention that there is no evidence to support an essential element of the crime, the sufficiency of the evidence may not be questioned, and if there is any evidence, no matter how little, the conviction cannot be upset for to do so would require a decision on a question of fact and not of law.
Id., 253 La. at 1035, 221 So.2d at 499.
Although the court did not explicitly declare Art. 778 unconstitutional in Hudson, the court held that “the trial judge cannot decide that question [the sufficiency of evidence touching upon guilt or innocence] and we cannot consider the sufficiency of the evidence on appeal. To do so would amount to an unconstitutional extension of our jurisdiction.” Id., 253 La. at 1036, 221 So.2d at 500. Rehearing was denied, although three of the justices believed the court’s consideration of the directed verdict issue was unnecessary, improper, and without authority. Following Hudson, motions for directed verdicts in jury trial cases were routinely denied as being unconstitutional under the state constitution.[15]
*148 Four years later, in 1973, this court reversed course in State v. Douglas, 278 | ]7So.2d 485 (La.1973).[16] In Douglas, a majority of the court held the constitutional validity of former Art. 778 had not been at issue in Hudson, and therefore the court’s sua sponte ruling on that issue was dictum. In re-examining the issue, the Douglas majority held that until the judge charges the jury as to the law applicable in a certain case, the judge, and not the jury, is the trier of the law. Douglas, 278 So.2d at 490.[17] Assuming the Hudson, decision and its progeny rendered Art. 778 unconstitutional, the court reinstated Art. 778 by overruling Hudson “to the extent that it invalidates the directed verdict article.” Id.; see also State v. Patterson, 295 So.2d 792, 793 (La.1974).[18]
The reinstatement of former Art. 778 after Douglas turned out to be short-lived. Two years later, in 1975, the legislature abolished the authority of a judge to direct a verdict in a criminal jury trial. La. Acts 1975, No. 527 amended Art. 778 to its current form, providing for its application “in a trial by the judge alone.” Since the 1975 amendment, this court has consistently held that a trial judge has no authority or right to grant a criminal defendant’s motion for directed verdict in a criminal jury trial. See State v. Brooks, 452 So.2d 149, 157 (La.1984); State v.J^King, 355 So.2d 1305,1310 (La.1978); State v. Ferguson, 358 So.2d 1214, 1220 (La.1978); State v. Jackson, 344 So.2d 961, 962 (La.1977); State v. Charles, 350 So.2d 595, 599 (La. 1977); State v. Spears, 350 So.2d 603, 607 (La.1977); State v. Schouest, 351 So.2d 462, 468 (La.1977); State v. Marks, 337 So.2d 1177, 1184 n. 3 (La.1976).
The Supreme Court noted this unique historical feature of Louisiana criminal law in Hudson v. Louisiana, 450 U.S. 40, 41 n. 1, 101 S.Ct. 970, 971 n. 1, 67 L.Ed.2d 30 (1981).[19] There, the Supreme Court noted: “Louisiana’s Code of Criminal Procedure does not authorize trial judges to enter judgments of acquittal in jury trials.” When the Supreme Court decided Hudson *149 in 1981, “a [Louisiana] criminal defendant’s only means of challenging the sufficiency of evidence presented against him to a jury [was] a motion for new trial” under La.C.Cr.P. art. 851. Id.[20] Not until 1982 did the Louisiana legislature authorize a trial judge to consider the sufficiency of the evidence in a criminal jury trial through a motion for post-verdict judgment of acquittal. See La. Acts 1982, No. 144.[21]
Lain fact, we note the Supreme Court has at least twice acknowledged that states may preclude midtrial acquittals by the court, as Louisiana has done. In Smith v. Massachusetts, 543 U.S. 462, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005), where a Massachusetts rule patterned on Fed. Rule Crim. Pro. 29 was at issue, the Supreme Court discussed the methods by which states could protect themselves from ill-considered acquittal rulings, either by rendering midtrial acquittals non-final, or by deferring consideration of such motions until after the verdict. Id., 543 U.S. at 474, 125 S.Ct. at 1138. The Court parenthetically stated “[a]t least one State has altogether precluded midtrial acquittals by the court” and referenced a Nevada rule. Id.
More recently, in Evans, the Supreme Court responded to the state’s and government’s argument that a defendant reaps a “windfall” from the trial court’s unreviewable error when a trial judge with the authority to do so grants an acquittal based on a legal error. The Supreme Court held “sovereigns are hardly powerless to prevent this sort of situation, as we observed in Smith ... Nothing obligates a jurisdiction to afford its trial courts the power to grant a midtrial acquittal, and at least two States disallow the practice.” Id., 133 S.Ct. at 1081. This time, the Supreme Court recognized the rules in Nevada and Louisiana. Id.

Analysis

Considering Louisiana’s history of denying to trial judges the power to rule *150 on evidence sufficiency before a criminal jury, we turn to the instant case. By acting without authority on the defendant’s motion for directed verdict, the trial judge interrupted the trial process, prevented the jury from considering the sufficiency of the evidence and foreclosed the jury’s ability to render a lawful | ¡^verdict.[22] The Supreme Court has held the defendant’s right to have his trial completed by a certain tribunal must in some instances give way to the public’s interest in fair trials: “... [A] defendant’s valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public’s interest in fair trials designed to end in just judgments.” Wade, 336 U.S. at 689, 69 S.Ct. at 837. We believe both the defendant and the public have the right to a valid verdict, and in this case, the rights of neither were maintained.
We are asked to determine whether the trial judge’s directed verdict of acquittal, an action taken wholly without legal authority, nevertheless acts as an acquittal. We think it does not. Instead, as we have held in previous cases, when a court makes a ruling without right or authority, the ruling is ultra vires and is of no effect. Succession of Jenkins, 230 La. 367, 370, 88 So.2d 659, 660 (La.1956); see also Beene v. Pardue, 226 La. 606, 612, 76 So.2d 902, 904 (La.1954) (a ruling by a court without authority must be annulled and set aside). We have recognized that “[n]o court, by its convention or ruling, can derogate from the force of law constitutionally imposed. If the [district courts] could extend their powers, they could alter the provisions granted by the Constitution.” llardo v. Agurs, 226 La. 613, 617, 76 So.2d 904, 906 (La.1954).
We have held a verdict rendered contrary to constitutional and statutory authority is invalid and illegal. See Goodley, 423 So.2d at 650; State v. Egena, 347 So.2d 1106, 1107 (La.1977). A criminal defendant has no right to an unlawful verdict, nor can he have a valid expectation that such a verdict will be given effect. | ai See State v. Givens, 403 So.2d 65, 67 (La.1981). Thus, an illegal verdict acts as neither an acquittal nor a conviction. See State v. Campbell, 1995-1409, p. 5 (La.3/22/96); 670 So.2d 1212, 1214; Goodley, 423 So.2d at 650; State v. Cook, 396 So.2d 1258, 1261 (La.1981). Based on this authority, we find the trial judge’s directed verdict of acquittal in Davenport’s trial was unauthorized, invalid and illegal, and that the verdict illegally rendered has no effect.
Having found the trial court’s ruling on the motion for directed verdict was an illegal verdict, we must return to the question whether a legally ordered mistrial was ordered by the trial judge after he realized his error. The trial court found it was impossible to continue the trial at that point because the jury was dismissed at the time he entered the illegal verdict. Therefore, the trial court based its mistrial on Art. 775(5), providing mistrial may be ordered when “[it] is physically impossible to proceed with the trial in conformity with law.”
*151 Art. 775(5) is generally interpreted as a ground for mistrial when there is some physical necessity for doing so. Such an occurrence “may result from such contingencies as the death or illness of the judge, a juror, attorney, or a member of their immediate families.” See Art. 775, Official Revision Comment (c)(1); State v. Delore, 381 So.2d 455, 459 (La.1980) (ill juror); State v. Bennett, 841 So.2d 847, 854 (La. 1977) (juror disabled by illness and no alternate available); and State v. Moten, 510 So.2d 55, 58 (La.App. 1 Cir.); writ denied, 514 So.2d 126 (La.1987) (prosecuting attorney ill and no other assistant district attorney prepared to try the case). We find there is no question the absence of the only legally-authorized judge of the law and the facts on the question of guilt or innocence made it a physical impossibility to proceed with Davenport’s trial in conformity with the law after the jury was released, and hold that mistrial was proper under Art. 775(5).
We also find a mistrial might also have been properly granted pursuant to |22Art. 775(3). Under this subsection, a mistrial may be ordered when “[tjhere is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.” An example of a legal defect which would justify a mistrial is a substantial defect in the indictment. See State v. Birabent, 305 So.2d 448, 451 (La.1974), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); see also Art. 775, Official Revision Comment (g). We find the trial judge’s illegal verdict rendered in this ease also constitutes a “legal defect ... which would make any judgment entered upon a verdict reversible as a matter of law” and hold mistrial would have been proper under this additional ground.[23]
Under the provisions of Art. 591, a trial which ends in a legally ordered mistrial does not bar a subsequent prosecution for the same offense. We have held the mistrial ordered in Davenport’s trial was valid under the law. Moreover, we have held that when an initial trial ends with an illegal verdict, double jeopardy does not bar retrial. Campbell, 1995-1409, p. 4-5; 670 So.2d at 1214; Egena, 347 So.2d at 1107. “Under the Fifth Amendment, where a non-waivable defect, such as an illegal verdict, prevents a jury from delivering either a conviction or acquittal at a defendant’s first trial, that defendant cannot avail himself of the plea of double jeopardy.” Goodley, 423 So.2d at 651. Although we find jeopardy attached in Davenport’s trial for aggravated rape, we conclude the illegal verdict prevented jeopardy from ending so as to bar a subsequent prosecution.

Conclusion

Based on the foregoing law and analysis, we find the trial judge was without ^authority to grant the defendant’s motion for acquittal before his case went to the jury in his criminal trial. This unauthorized action resulted in an illegal verdict which can have no effect. We hold the trial judge’s subsequent declaration of a mistrial was valid, since it was physically *152 impossible to proceed with the trial in conformity with the law after the jury had been released, and the illegal verdict constituted a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law.
DECREE
Accordingly, we reverse the court of appeal’s judgment, reinstate the trial court’s order of mistrial, and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED.
JOHNSON, Chief Justice, dissents and assigns reasons.
WEIMER, Justice, dissents and assigns reasons.

. The state’s objection failed to point out that Art. 778 was not applicable in a jury trial.

. See Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

. Fed. Rule Crim. Proc. 29 currently provides in pertinent part: (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so. (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

. In Evans, the rule at issue was Michigan Rule Crim. Proc. 6.419(A) (2012), which provides in pertinent part:
Rule 6.419 Motion for Directed Verdict of Acquittal
(A) Before Submission to Jury. After the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant’s motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction. The court may not reserve decision on the defendant’s motion. If the defendant's motion is made after the defendant presents proofs, the court may reserve decision on the motion, submit the case to the jury, and decide the motion before or after the jury has completed its deliberations.

. Davenport, 2013-39, p. 3; 116 So.3d at 1040.

. La. Const, art. V, § 16 provides in pertinent part: "(A) Original Jurisdiction. (1) except as otherwise authorized by this constitution ... a district court shall have original jurisdiction of all civil and criminal matters. (2) It shall have exclusive original jurisdiction of felony cases.... ”

. La. Const, art. I, § 17(A) provides in pertinent part: "A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.... Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable.”

. See La. R.S. 14:42(D)(1).

. La.C.Cr.P. art. 802 provides: The court shall charge the jury:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.

. La.C.Cr.P. art. 821 provides:
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B: A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.

. See La. Acts 1950, No. 447. Former La. R.S. 15:402.1 provided:
In any criminal prosecution or proceeding in any court, triable by the court alone, the court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or affidavit after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant’s motion for a directed verdict at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right. The judgment of the court in refusing to grant such motion by the defendant shall not be subject to review by any appellate court.

. One advantage of the legislation was that the motion, if valid, would shorten the trial of cases in which the evidence clearly could not justify a conviction. In addition, a defendant no longer had to make the risky decision whether to rest his case at the close of the state’s evidence. See Symposium, “Louisiana Legislation of 1950,” 11 La. Law Rev. 22, 44 (Nov. 1950). “Formerly, the defense could have similarly abbreviated the proceedings by resting its case, but to take such a position was of course precarious. However, under the new legislation, the defense may move for acquittal without yielding its right to introduce evidence later if the motion should be denied.” Id.

. This court interpreted the law as being further limited to misdemeanor cases tried by a judge. See State v. Cade, 244 La. 534, 559, 153 So.2d 382, 391 (La. 1963); and State v. Gatlin, 241 La. 321, 333, 129 So.2d 4, 8 (La. 1961), overruled on other grounds, State v. Liggett, 363 So.2d 1184 (La.1978) and State v. Thompson, 366 So.2d 1291 (1978).

. See La. Acts 1966, No. 310.

. See State v. Douglas, 278 So.2d 485, 489 n. 4 (La.1973) (citing cases) and 278 So.2d at 494 (Summers, J. dissenting) (citing cases).

. One of the dissenting justices attributed the change in course to a change in personnel on the bench. "This decision entails a deliberate violation of the Constitution by the new found majority of the court.” Id., 278 So.2d at 493 (Summers, J. dissenting); the Douglas matter was decided by a 4-3 decision.

. The Douglas majority noted the contrast between Louisiana and the federal government as to how the sufficiency of the evidence was then viewed. Unlike in Louisiana, "[i]n the federal system, sufficiency of the evidence is a question of law.” Id., 278 So.2d at 490. The court noted "[i]n Louisiana we have said that insufficiency of the evidence is not a question of law and may not be reviewed by this court.” Id. However, the court reiterated its longstanding holding that the total lack of evidence, i.e. no evidence, is a question of law and may be considered by the court, provided the issue is properly preserved for review. Consequently, the Douglas majority held “that the language in Article 778 '... if the evidence is insufficient to sustain a conviction’ refers to a situation in which the prosecution has produced no evidence to prove a crime or an essential element.” Id., 278 So.2d at 491.

. State v. Baskin, 301 So.2d 313, 315 (La. 1974) was decided one year later. Relying on Douglas, Baskin dismissed the state's appeal of a motion for directed verdict which was granted by the trial judge and cited the Supreme Court's holding in Fong Foo as authority for its analysis. Here, the defendant relies upon Baskin in its brief. However, Baskin was decided under the 1966 version of Art. 778, during the brief period when trial judges had authority to grant directed verdicts in jury trials. Art. 778 has since been amended and Baskin cannot serve as authority for our present analysis. The two other Louisiana cases cited by the defendant involved motions for directed verdicts in judge trials, and are similarly inapplicable.

. The petitioner in this matter was Tracy Lee Hudson, and this case bears no relation to State v. Hudson, supra, where the appellant was Larry Hudson.

. By the time Hudson was decided in 1981, the question of the proper review standard for evidence sufficiency was answered by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Jackson v. Virginia held as a matter of federal due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id., 99 S.Ct. at 2789. Louisiana adopted this standard for cases on direct review in State v. Mathews, 375 So.2d 1165, 1168 (La.1979) and State v. Abercrombie, 375 So.2d 1170, 1178 (La.1979) ("... Jackson v. Virginia, ... seems to hold that federal due process mandates a broader standard of review of the sufficiency of the evidence to support a conviction than the "some evidence" rule.”) (citation omitted). In Hudson, the Supreme Court invalidated the distinction between "no evidence” and "insufficient evidence” which Louisiana courts had used to avoid conflict with the state constitution’s limitation on the appellate jurisdiction of the court. The Supreme Court held "[njothing ... suggests ... that double jeopardy protections are violated only when the prosecution has adduced no evidence at all of the crime or an element thereof.” Hudson, 450 U.S. at 43, 101 S.Ct. at 972.

. La.C.Cr.P. art. 821 incorporates the evidence sufficiency standard of Jackson v. Virginia and provides authority for a trial judge to either grant a post-verdict judgment of acquittal or to modify a verdict upon a finding that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty, or supports only a conviction of a lesser included responsive offense. In either of those instances, however, the defense may only move for, and the trial judge may only act upon, the motion following the return of the jury’s verdict. Even after the return of the jury’s verdict, there is no mechanism in Louisiana law by which the trial judge could review or raise the sufficiency of the evidence on his own motion. The issue of evidence sufficiency must be raised by the defendant.

. In addition to judging guilt and innocence for the charged offense, the jury also decides whether the evidence was sufficient to support a charge of a lesser included offense. In State ex rel. Robinson v. Blackburn, 367 So.2d 360, 362-363 (La. 1979), we noted this "essential distinction” between the directed verdict and the verdict of the jury: One essential distinction between the directed verdict and the guilty verdict is that the jury has the option to return a verdict of guilty on a lesser and included offense while the trial judge's directed verdict of acquittal can only be on the charge contained in the indictment.

. We find this legal defect akin to one of the grounds for a valid motion for arrest of judgment, i.e. that the verdict is "... so defective that it will not form the basis of a valid judgment.” See La.C.Cr.P. art. 859(5). The Official Revision Comment — 1966 to Art. 859 states that this latter part of Subsection (5) "is based on part of the language in Art. 279 of the 1928 Code, which lists the requisites for double jeopardy. This particular language is advisedly employed in order to make clear the intention that a motion in arrest of judgment should be sustained in any case in which the verdict will not support a plea of former jeopardy.” See also State v. Butler, 331 So.2d 425, 429 (La. 1976) (“Properly viewed, Article 859(5) is authority for inquiry into the Legality of the verdict only, not its Correctness.”).